1

2

3

4

5

6                      IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9    UNITED STATES OF AMERICA,          )    No. CR 04-02195-TUC-CKJ (BPV)
                                        )
10                Plaintiff,            )
                                        )
11   vs.                                )    **ORDER**
                                        )
12   MARY ELIZABETH SCHIPKE,            )
                                        )
13                Defendant.            )
     _____)

14

15          On March 1, 2011, Magistrate Judge Bernardo P. Velasco issued a Report and

16   Recommendation [Doc. 559] in which he found the defendant violated the conditions of

17   supervised release as set forth in the Amended Superseding Petition to Revoke Supervised

     Release [Doc. 546].

18
            On March 9, 2011, the Government filed its Objection to the Magistrate's Report and
19
     Recommendation on Revocation Proceedings (Violation of Supervised Release) [Doc. 567].
20
     On March 10, 2011, Defendant filed her Objections to Magistrate Judge's Report and
21
     Recommendation [Doc. 570], as well as her Response to Government's Objection to
22
     Magistrate's Report and Recommendation [Doc. 571]. On March 15, 2011, the Government
23
     filed its Response to Defendant's Objection to the Magistrate's Report and Recommendation
24
     [Doc. 572].
25
     . . .
26
     . . .
27
     . . .
28

1  *Standard of Review*

2       The Court reviews de novo the objected-to portions of the Report and

3  Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear

4  error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema*

5  *Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *See also, Conley v. Crabtree*, 14

6  F.Supp.2d 1203, 1204 (D. Or. 1998).

7

8  *Factual Background*

9       On February 16, 2011, an evidentiary hearing was held before Magistrate Judge

10  Bernardo P. Velasco regarding the Amended Superseding Petition to Revoke Supervised

11  Release [Doc. 546]. At that hearing, the Government called as witnesses Barbara Wentz,

12  John Cruz, Donna Salazar, University of Arizona Police (UAPD) Officer Ian Kelly, UAPD

13  Officer Martin Ramirez, Tonya McCracken, and Andrea Sanders. Defendant called as

14  witnesses Agent Andrew Tuzzolino, Detective Joe Dopadre, and Defendant.

15       Ms. Wentz testified that she was Judge Roll's assistant judicial assistant. Hr'g Tr. at

16  5:16-18, Feb. 16, 2011 [Doc. 562]. Her job responsibilities included handling the criminal

17  caseload, including the calendaring, motions, and answering telephone calls. *Id.* at 5:22-6:5.

18  On January 10, 2011, the Monday following Judge Roll's death, Ms. Wentz reported to

19  work. *Id.* at 6:15-7:10. It was a day of overwhelming sadness. *Id.* at 7:11-15. At

20  approximately 2:00 p.m. that day, Ms. Wentz received a telephone call from Defendant. *Id.*

21  at 8:10-20. Defendant identified herself to Ms. Wentz and said that she had a 2255 before

22  Judge Roll. Hr'g Tr. [Doc. 562] at 9:8-14. As Ms. Wentz listened, Defendant's voice got

23  louder as she said, "And God struck his mean ass down and now what." *Id.* Ms. Wentz was

24  stunned and shocked, and in disbelief hung up the telephone. *Id.* Ms. Wentz testified that

25  the interaction "almost took my breath away." *Id.* at 9:18-10:1. Furthermore, she found the

26  call to be "mean and harassing." *Id.* at 10:15-18. Ms. Wentz immediately began drafting an

27  e-mail to inform the U.S. Marshals. *Id.* at 10:19-11:1. Defendant called a second time within

28  

- 2 -

1  seconds after the first call was terminated.  Hr'g Tr. [Doc. 562] at 13:20-14:9.  Defendant

2  said, "You hung up on me."  *Id.* at 10:19-11:1.  Ms. Wentz testified that the second

3  conversation was brief, with Defendant providing her contact information. *Id.* at 14:13-15:2.

4         On January 11, 2011, the night prior to the Together We Thrive: Tucson and America

5  event at the University of Arizona, Defendant went to the university and spoke to an

6  unidentified security guard.  Hr'g Tr. [Doc. 562] at 135:5-17.  Defendant told the security

7  guard that she wanted "to come here as a member of the press tomorrow, what do I need to

8  do, and the security guard told [her] how they were going to shut everything down."  *Id.*

9  Defendant testified that on the same evening she "walked down the grassy knoll and there

10 was a couple media people already set up there, and [she] spoke with a gal from Channel 4

11 news."  *Id.* at 135:21-136:1.  Defendant testified that she told the newswoman that she was

12 an innocent victim of Judge Roll.  *Id.*  The Channel 4 person allegedly told Defendant to

13 come back the following day to talk to her.  *Id.*  Defendant testified that her "sole intent was

14 to go back and speak with the gal from Channel 4 news."[1]  Hr'g Tr. [Doc. 562] at 135:21-

15 136:1.  Defendant further testified that she has been a member of the Tucson Alternative

16 Media for over twenty (20) years.  *Id.* at 136:8-20.  Defendant listed several radio shows and

17 newspaper articles that she has written, and acknowledged that they were all "ancient

18 newspapers that are no longer around.  But I consider myself a member of the media."  *Id.*

19 Defendant physically created the press pass that she used on January 12, 2011.  *Id.* at 137:

20 4-6. Defendant testified that in addition to talking to the Channel 4 person, she wanted to see

21 if she "could get anybody interested in picking up the story on [media members being

22 wrongfully convicted]."  *Id.* at 138:15-20.  Defendant informed the police aide at the media

23 area entrance that she was with the media and was let in.  *Id*. at 137:17-138:6.

24        University of Arizona Police Officer Ian Kelly testified that on January 12, 2011,

25

26

27       [1]There is no further evidence regarding the identity or existence of the Channel 4
   newsperson or this conversation.

28

1   while working the Together We Thrive event, he was in charge of the ensuring that the media

2   section outside of McKale Center was secure. Hr'g Tr. [Doc. 562] at 43:7-24. Officer Kelly

3   was vested with the authority to tell someone who was not a media representative to leave

4   the area. *Id.* at 48:2-7; 65:2-20. Having a designated media area was intended to allow the

5   media to conduct their activities without interruptions. *Id.* at 45:13-18. Additionally, there

6   was a separate designated area for protesters. *Id.* at 45:19-24. Officer Kelly testified that the

7   media area was cordoned off with a combination of pedestrian rails, hard road closures and

8   yellow police tape that said police line, do not cross. *Id.* at 46:13-47:7. Furthermore, there

9   were approximately six (6) officers patrolling the area, as well as police aides to keep the

10  area secure. Hr'g Tr. [Doc. 562] at 47:10-21.

11        Officer Kelly testified that at approximately 1300 hours he was flagged down by a

12  White House correspondent and directed to the southwest corner of the media area, where

13  Officer Kelly met Defendant who was inside the designated media area. Hr'g Tr. [Doc. 562]

14  at 49:4-15. The White House correspondent informed Officer Kelly that Defendant should

15  be checked out because she did not appear to belong with the media and was doing things

16  that media people don't do. *Id.* at 55:11-16. Defendant was wearing a press pass for Global

17  Divine News. *Id.* at 51:5-52:5. Officer Kelly asked Defendant what she was doing in the

18  area because there were complaints. *Id.* at 52:6-24. He also questioned her about a poster

19  that was behind her, because it appeared to be a protest poster. *Id.* The poster had

20  Defendant's booking photograph on it. *Id.* at 53:5-25. Defendant stated to Officer Kelly that

21  she was doing double duty and that she wanted to be with her people, the media. *Id.* at 52:6-

22  24. Defendant also made comments to the effect that what happened to Judge Roll,

23  Congresswoman Giffords and Mr. Zimmerman was divine intervention. Hr'g Tr. at 52:6-24.

24  As their interaction progressed, Defendant became loud and began making a scene. *Id.* at

25  55:2-8. At that point, Officer Kelly called for his supervisor, Officer Martin Ramirez, who

26  alerted Secret Service. *Id.* at 52:6-24. Based on his interaction with Defendant, Officer

27  Kelly believed that she was protesting. *Id.* at 53:14-16. Accordingly, Officer Kelly informed

28                                                    - 4 -

1  Defendant that she would need to leave the media area, and that he would be more than

2  happy to escort her to the protest section. *Id.* at 55:20-56:1. Defendant refused to leave. *Id.*

3  Officer Kelly's interaction with Defendant lasted approximately ten (10) minutes. Hr'g Tr.

4  56:2-3.

5      The Secret Service agent arrived with a Department of Public Safety (DPS) officer.

6  *Id.* at 56:4-16. Once the Secret Service agent arrived, Officer Kelly remained with them for

7  approximately an hour to an hour and a half acting as a liaison officer, but had no further

8  interaction with Defendant. *Id.* at 60:5-10. Secret Service Agent Andrew Tuzzolino testified

9  that on January 12, 2011, he was the responding agent to the call regarding Defendant. *Id.*

10  at 110:6-111:5. Agent Tuzzolino's responsibility on that day was to determine whether an

11  individual was posing a threat to the President. *Id*. at 110:6-15; 119:15-120:3. Once Agent

12  Tuzzolino determined that Defendant was not there to harm the President, his mission was

13  fulfilled. *Id.* at 119:15-120:3.

14

15  *Analysis*

16      1.  Harassment

17      The magistrate judge found Defendant violated the law as alleged in Allegation A of

18  the Amended Superseding Petition to Revoke Supervised Release [Doc. 546]. Section 13-

19  2921, Arizona Revised Statutes, states that:

20      A person commits harassment if, with intent to harass or with knowledge that
        the person is harassing another person, the person:
21          1.  Anonymously or otherwise contacts, communicates or causes a
            communication with another person by verbal, electronic, mechanical,
22          telegraphic, telephonic or written means in a manner that harasses.

23  A.R.S. § 13-2921(A).   Defendant called Judge Roll's chambers on January 11, 2011.

24  Defendant repeatedly asked which judge was going to be assigned to her pending civil

25  matter, despite being told that it was unknown at that time. Defendant went on to make

26  inappropriate statements about Judge Roll's death, and called back despite knowing that

27  Judge Roll's staff member was so upset that she hung up the phone. Based upon this Court's

28

1  independent review of the pleadings, exhibits and transcript, the evidence supports

2  Magistrate Judge Velasco's finding that Defendant violated the law as alleged in Allegation

3  A of the Amended Superseding Petition to Revoke Supervised Release [Doc. 546].

4       2.  Criminal Trespass

5       The magistrate judge found Defendant violated the law as alleged in Allegation B of

6  the Amended Superseding Petition to Revoke Supervised Release [Doc. 546].  Section 13-

7  1503, Arizona Revised Statutes, states that:

8          A person commits criminal trespass in the second degree by knowingly
           entering or remaining unlawfully in or on any nonresidential structure or in

9          any fenced commercial yard.

10  A.R.S. § 13-1503(A).  On January 12, 2011, Defendant knowingly entered the designated

11  media area outside of McKale Center for the Together We Thrive event.  This area was

12  cordoned off on all sides.  University of Arizona police were alerted to Defendant's presence

13  because of her behavior.  A White House correspondent approached Officer Kelly saying that

14  Defendant needed to be checked out because she was doing things that media people do not

15  do.  Hr'g Tr. [Doc. 562] at 55:11-16.  As Officer Kelly approached Defendant, he witnessed

16  her making rude and outlandish comments towards the media.  *Id.* at 67:10-17.  Defendant

17  stated that Judge Roll, Gabby Giffords and Zimmerman got what they deserved and that it

18  was divine intervention.  *Id.* at 73:1-23.  Officer Kelly spoke with Defendant, and asked her

19  to leave the area because she was protesting.  Defendant refused to leave.  Based upon this

20  Court's independent review of the pleadings, exhibits and transcript, the evidence supports

21  Magistrate Judge Velasco's finding that Defendant violated the law as alleged in Allegation

22  B of the Amended Superseding Petition to Revoke Supervised Release [Doc. 546].

23       3.  False Reporting

24       The magistrate judge found Defendant did not violate the law as alleged in Allegation

25  C of the Amended Superseding Petition to Revoke Supervised Release [Doc. 546].  Section

26  13-2907.01, Arizona Revised Statute, states that:

27          It is unlawful for a person to knowingly make to a law enforcement agency of

28

1
2
3

either this state or a political subdivision of this state a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer.

4
5
6
7
8
9
10
11

A.R.S. § 13-2907.01.  Defendant's "press pass" was homemade by her for the "Global Divine News" spiritual network.  Defendant was unequivocal that she was performing "double duty" as a member of the media and as a protester.  The evidence before the Court does not support a finding that Defendant knowingly misrepresented a fact for the purpose of interfering with law enforcement.  Based upon this Court's independent review of the pleadings, exhibits and transcript, the evidence supports Magistrate Judge Velasco's finding that Defendant did not violate the law as alleged in Allegation C of the Amended Superseding Petition to Revoke Supervised Release [Doc. 546].

12
13
14
15
16

Accordingly, after an independent review of the pleadings, exhibits and transcript, IT IS HEREBY ORDERED that the Report and Recommendation [Doc. 570] is ADOPTED. THE COURT FINDS that Defendant violated the law as alleged in Allegations A and B of the Amended Superseding Petition to Revoke Supervised Release [Doc. 546] and that Defendant did not commit the offense alleged in Allegation C of the Petition.

17

DATED this 20th day of April, 2011.

18
19

Cindy K. Jorgenson
United States District Judge

20
21
22
23
24
25
26
27
28